AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

## UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
APR **1 9** 2019
AT _____ O'CLOCK
John M. Domurad, Clerk - Albany

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 1:19-mj-264-DJS |
| IN THE MATTER OF THE SEARCH OF | ) |
| SAMSUNG SM-J336AZ CELL PHONE (S/N: | ) |
| R28K53A6L4T) CURRENTLY LOCATED AT | ) |
| US MARSHALS SERVICE OFFICE LOCATED | ) |
| IN ALBANY NEW YORK | ) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

Attachment A

located in the ___Northern___ District of ___New York___ , there is now concealed
*(identify the person or describe the property to be seized)*:

Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2250 | Failure to Register as a sex offender |

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days): _____
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Imbugio, Deputy US Marshal
_____
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

Sworn to before me and signed in my presence.

Date: Apr. 19, 2019

_____
*Judge's signature*

City and State: Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG SM-J336AZ CELL PHONE (S/N: R28K53A6L4T) CURRENTLY LOCATED AT US MARSHALS SERVICE OFFICE LOCATED IN ALBANY NEW YORK | Case No. _1:19-mj-264-DJS_ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Robert Imburgio, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, as described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Criminal Investigator/Deputy United States Marshal with the United States Marshals Service, and I have been so employed for 9 years.  I am currently assigned to the Albany, New York Division, and I conduct various criminal investigations including violations of the Adam Walsh Child Protection Act of 2006.  In 2018, I attended Sex Offender Investigation Coordinator Basic training and am a collateral district Sex Offender Investigations Coordinator.  As a Deputy Marshal, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the Sex Offender Registration and Notification Act ("SORNA"), and specifically those involving the interstate

travel of persons required to register under SORNA, in violation of Title 18, United States Code, Section 2250.  I have received training and instruction in conducting online SORNA investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2250(a), Failure to Register as a Sex Offender, have been committed by Eric TOMPKINS and there is probable cause to search the device described in Attachment A for evidence of this crime, as described in Attachment B.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is a Samsung Model SM-J336AZ cell phone bearing serial number R28K53A6L4T currently located in the United States Marshals Service evidence locker located in Albany New York (hereinafter the SUBJECT DEVICE).

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      The USMS is conducting a criminal investigation into TOMPKINS' failure to register as a sex offender in violation of 18 U.S.C. § 2250(a).  On February 9, 2009, TOMPKINS was arrested by the Okanogan County Sheriff's Office in Washington and charged with Child

2

Molestation First Degree, in violation of the Revised Code of Washington ("RCW") §

9A.44.083.  On September 3, 2009, TOMPKINS was convicted of violating RCW 9A.44.089,

Child Molestation Third Degree.  A person is guilty of such an offense when he "has, or

knowingly causes another person under the age of eighteen to have, sexual contact with another

who is at least fourteen years old but less than sixteen years old and not married to the

perpetrator and the perpetrator is at least forty-eight months older than the victim."  The victim

in the case was allegedly ten years old and the defendant was 25 years old at the time of the

offense.  TOMPKINS was sentenced to a term of twelve (12) months Community Custody and

required to register as a sex offender.

       8.     On July 23, 2009, TOMPKINS signed a plea agreement in the Superior Court of

Washington for Okanogan County.  As part of this plea, TOMPKINS signed and dated a

"Statement of Defendant on Plea of Guilty to Sex Offense" and "Offender Registration

Attachment" which included the advisement that he must register as a sex offender, and that "if I

move to another state, or if I work, carry on a vocation, or attend school in another state I must

register a new address, fingerprints, and photograph with the new state within 10 days after

establishing residence, or after beginning to work, carry on a vocation, or attend school in the

new state."  TOMPKINS signed the Statement indicating that he understood the requirements of

the Statement and Attachment.

       9.     On September 3, 2009, TOMPKINS was sentenced in the Superior Court of

Washington for Okanogan County to 12 months of Community Custody.  As part of sentencing,

TOMPKINS signed and dated a "Felony Judgement and Sentence" which included the provision,

"[i]f you move to another state, or if you work, carry on a vocation, or attend school in another

state you must register a new address, fingerprints, and photograph with the new state within 10

days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state."

10.     From November 2009 through October 2011 TOMPKINS was compliant with registration requirements and submitted change of address registration updates to the Grant County Sheriff on five separate occasions.

11.     On October 27, 2014, the Grant County Sheriff's Office became aware that TOMPKINS had failed to verify his address, or complete change of address notifications since his last registration update in 2011. The Grant County Sheriff's Office located TOMPKINS and provided a copy of the "Sex and Kidnapping Offender Notification of Registration and Requirements (Revised 7/22/2011)" RCW 9A.44.130. A Grant County Sheriff's Deputy reviewed the registration requirements with TOMPKINS and the document, which stated "[o]ffenders required to register in Washington, who move to another state, or who work, carry on a vocation, or attend school in another state shall register a new address, fingerprints, and photograph with the new state within three business days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state," was signed by both the Grant County Deputy and TOMPKINS.

12.     On August 11, 2016, the Grant County Sheriff's Office attempted to locate TOMPKINS at his registered address 726 Eastlake Ave (aka Main Ave), Soap Lake, Washington to conduct an annual address verification. The Grant County Sheriff's Office discovered that TOMPKINS was no longer residing at his registered address and had not completed a change of address notification as required. Between August 2016 and February 2017 the Grant County Sheriff's Office was unable locate TOMPKINS and an arrest warrant for TOMPKINS was

4

issued by the Grant County Superior Court for violation of RCW 9A.44.132 Fail to Register as Sex Offender.

13.     On February 27, 2017 TOMPKINS obtained employment at the Hoffman Car Wash, 5 Lowes Drive, Saratoga Springs, New York. According to Hoffman employee records, TOMPKINS was employed at the Hoffman Car Wash from February 27, 2017 through July 11, 2017. According to Hoffman employee records TOMPKINS listed his home address as a residence in Clifton Park, New York.

14.     On January 24, 2018 TOMPKINS obtained employment at Taco Bell, 811 Route 146, Clifton Park, New York. According to Taco Bell employee records, TOMPKINS was employed at this location from January 24, 2018 through August 14, 2018. According to Taco Bell employee records TOMPKINS listed his home address as a residence in Clifton Park, New York.

15.     On October 19, 2018, a due diligence search was performed by investigators with the New York State Division of Criminal Justice Services (NYDCJS) and determined TOMPKINS was not registered as a sex offender in New York State. Investigators have continued to conduct a search of NYDCJS records regularly since October 19, 2018, including March 13, 2019, and have determined that TOMPKINS has not registered as a sex offender in New York State.

16.     On March 18, 2019, based on the facts provided in an affidavit, including the facts set forth above, the Honorable Daniel J. Stewart signed a Criminal Complaint accusing TOMPKINS of violating 18 U.S.C. 2250(a), failure to register and update a sex offender registration as required by the Sex Offender Registration and Notification Act, and a warrant for TOMPKINS's arrest.

5

17.     TOMPKINS was arrested on March 28, 2019.  Prior to entering the transport vehicle, TOMPKINS asked his girlfriend to get his shoes and phone.  TOMPKINS' girlfriend placed the SUBJECT DEVICE in his pocket.  At the time that TOMPKINS entered the transport vehicle following arrest he had the SUBJECT DEVICE in his possession.  At that time, the SUBJECT DEVICE was seized by your Affiant.  TOMPKINS was read his *Miranda* rights while in transit to the USMS office and agreed to speak with your Affiant.  While in the vehicle, I asked TOMPKINS if he would like any phone numbers from the SUBJECT DEVICE.  He said yes and provided the passcode to unlock the SUBJECT DEVICE.  I then provided TOMPKINS with the phone numbers for his uncle, aunt and girlfriend, all of whom reside in the Northern District of New York, that were contained in the contacts section of the SUBJECT DEVICE.

18.     As part of this investigation, investigators also reviewed publicly-available information on Facebook, which reveals an account in the name "Eric Bleu," which appears to be the account of TOMPKINS.  The account contains "selfie" photographs of TOMPKINS, including photographs taken in front of what appears to be a residence where he was staying for a period of time in Clifton Park, New York.  The selfies appear to be the type that are typically taken using a cell phone.  In my training and experience, people also often access Facebook through the use of a cell phone.

19.     The SUBJECT DEVICE is currently in the lawful possession of the United States Marshals Service.  It came into the Marshals Service's possession when it was seized incident to TOMPKINS' arrest on March 28, 2019.  Therefore, while the Marshals Service might already have all necessary authority to examine the SUBJECT DEVICE, I seek this additional warrant

6

out of an abundance of caution to be certain that an examination of the SUBJECT DEVICE will comply with the Fourth Amendment and other applicable laws.

20.     The SUBJECT DEVICE is currently in storage in the evidence locker at the United States Marshals Service's office in Albany, New York.  In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the Marshals Service.

## TECHNICAL TERMS

21.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

7

dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.  Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored images.
This storage media can contain any digital data, including data unrelated to
photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
handheld digital storage device designed primarily to store and play audio, video,
or photographic files.  However, a portable media player can also store other
digital data.  Some portable media players can use removable storage media.
Removable storage media include various types of flash memory cards or
miniature hard drives.  This removable storage media can also store any digital
data.  Depending on the model, a portable media player may have the ability to
store very large amounts of electronic data and may offer additional features such
as a calendar, contact list, clock, or games.

8

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets,

9

and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP

10

addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.   Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as where and when they possessed and used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

24.   *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

12

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

13

## **CONCLUSION**

27.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

Robert Imburgio
Criminal Investigator/Deputy Marshal
United States Marshals Service

Subscribed and sworn to before me
on April 19, 2019:

Hon. Daniel J. Stewart
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

The property to be searched is a Samsung Model SM-J336AZ cell phone bearing serial number R28K53A6L4T currently located in the United States Marshals Service evidence locker located in Albany New York (hereinafter the SUBJECT DEVICE).

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the SUBJECT DEVICE described in Attachment A that relate to violations of 18 U.S.C. § 2250(a), Failure to Register as a Sex Offender, and involve ERIC TOMPKINS, including:

      a.  Evidence indicating TOMPKINS' location and residence, including photographs, messages, call logs, GPS and geolocation data, WiFi connections, internet browsing history and financial records;

      b.  TOMPKINS' employment information;

      c.  TOMPKINS' registration as a sex offender, including in New York and Washington; and

      d.  Evidence indicating TOMPKINS' state of mind as it relates to the crime under investigation.

2.      Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.